THE FIRE ASSOCIATION OF PHILADELPHIA

*v.*

THOMAS WELLS.

[Submitted March 19th, 1914. Determined March 23d, 1914.]

1. Where an insurer pays for loss by fire occasioned by the negligence of a railroad company, it becomes entitled to subrogation against the railroad company by operation of law, and a subrogation receipt or other agreement is unnecessary.

2. Defendant's property, which was insured by complainant, was fired by the negligence of a railroad company. After complainant made payment to the amount of the policy and received a written receipt declaring that it should be subrogated to that amount, defendant settled with the railroad company, executing to it a release of all claims.—*Held*, that as defendant settled the claim without complainant's knowledge, and did not notify it of the giving of a release which was a *prima facie* bar, complainant is entitled to hold defendant as trustee for the amount of the loss which it paid.

On final hearing. On bill to charge defendant as trustee.

Defendant was the owner of certain buildings and their contents which have been totally destroyed by fire caused by the negligence of a railroad company. The buildings were protected by fire insurance written by complainant company to the amount of $2,000. After the fire complainant company paid the $2,000 insurance to defendant and received from defendant a receipt for the money, in which receipt defendant formally assigned to complainant his claim against the railroad company to that amount. Thereafter defendant, without the knowledge of complainant, made a settlement with the railroad company whereby he received from that company $5,000 and executed a general release discharging the railroad company from all liability by reason of the fire.

Complainant now seeks to recover from defendant its loss of $2,000.

By way of defence defendant claims that when he accepted the insurance money and executed the subrogation receipt in behalf of complainant, he was informed by the agent who paid him the money that he would be privileged to settle with the railroad company for the balance of his loss; and also claims that in making his settlement with the railroad company he settled for only the balance of his loss, and at that time apprised the railroad company of the fact that he had received the $2,000 insurance money and had executed a subrogation receipt to complainant insurance company for that amount.

*Messrs. Thompson & Smathers,* for the complainant.

*Messrs. Wescott & Weaver,* for the defendant.

LEAMING, V. C.

It was complainant's right and privilege to pay to defendant the amount of the insurance, and by that payment to become subrogated to defendant's claim against the railroad company to the extent of the amount paid. No "subrogation receipt" or other receipt or agreement was necessary; subrogation arose from the act of payment and not from the convention. *Monmouth County Fire Insurance Co.* v. *Hutchinson, 21 N. J. Eq. 107; Weber* v. *Morris and Essex Railroad Co., 35 N. J. Law 409, 413; Sheld. Subr. § 6.* But a writing was executed. That writing was signed by defendant and formally acknowledged by him before a notary public. It sets forth the payment of the insurance money and assigns to complainant defendant's claim against the railroad company to the amount of the payment. The receipt does no more than state the exact conditions which would have existed by operation of law without a receipt. Defendant claims that he was induced to accept the insurance money and sign the receipt by a statement of the insurance agent that the payment and receipt would not in any way interfere with defendant collecting the balance of his loss from the railroad company. The writing which was executed is silent touching any such privilege to be extended to defendant, and the agent denies that any such statement was made. But the views which I enter-

tain render it wholly immaterial whether any such statement was made or not.

While defendant claims to have made settlement with the railroad company for only the balance of his claim, and claims to have fully apprised the railroad company of the circumstances that the insurance money had been theretofore paid to him, he in fact executed to the railroad company a written general release of liability from all claims resulting from the fire; in order to procure his own money he consented to formally release the railroad company from its liability to complainant, and did this without the knowledge or consent of complainant. In making that settlement and in executing that instrument defendant was not acting in ignorance of his rights and duties in the slightest degree; the settlement was made under the immediate direction of his counsel. Touching that settlement his counsel has testified as follows:

"He [defendant] came to my office for the purpose of getting me to go with him to the railroad company. I went. It was stated on that occasion to the railroad's agents, Mr. Brister, their general agent, being present, and one or two others, that Mr. Wells [defendant] had accepted two thousand dollars from the insurance company and that he had signed subrogation receipts. It was then stated by me to the railroad company what Mr. Wells has testified to here before this court; it was further stated by me to the railroad company that they were running some risk of a law suit in this matter, to which Mr. Brister replied he would take the responsibility of that and take care of it."

Under these circumstances and with full appreciation of the fact that complainant was the equitable owner of a part of his claim against the railroad company, defendant executed a formal instrument releasing the railroad company from all liability for the losses occasioned by the fire, and now seeks to repudiate the terms and appropriate effect of his own deliberative written instrument, and to hold against the terms of his own declarations by the claim that he informed the railroad company that he had assigned a part of his claim to complainant and in fact made settlement of the balance only. It must be assumed that, under the circumstances narrated, some purpose existed for the execution of an instrument which in terms released complainant's claim, for, as already stated, de-

fendant knew that he had no right to release complainant's claim without first receiving from the railroad company for complainant complainant's money; whatever that purpose may have been, the legal effect of the act was to place in the hands of the railroad company an instrument which was operative as a bar to complainant's recovery of its claim against the railroad company unless complainant should be able to establish as a fact, to the satisfaction of a jury in an action against the railroad company, that prior to the execution of that instrument the railroad company had been apprised of complainant's rights. It thus appears that defendant not only had no right to execute the release of complainant's claim, but necessarily knew that he had no such right, and under the circumstances of the settlement, as disclosed by the testimony of his counsel, necessarily knew that the release which he executed was operative as a *prima facie* bar to complainant's right of recovery against the railroad company. It may well be doubted whether a person who has sustained a loss and who holds partial indemnity from a company entitled to be subrogated to the amount of the indemnity, is privileged, as against the indemnifying company, to make a compromise settlement with a company who is primarily liable for the whole loss, without the knowledge or co-operation of the indemnifying company. *Commercial Union Assurance Co.* v. *Lister, L. R. 9 Ch. App. Cas. 483.* But it is entirely clear that the owner of the legal title to the two concurrent claims in making such settlement without the knowledge or co-operation of the indemnifying company, whether the settlement should be of the whole claim or only of that part in excess of the amount of the indemnity, assumes the burden of equitable duties to the indemnifying company which are at least co-extensive with all rights which the indemnifying company could assert or preserve if present and participating in the settlement. In such circumstances the execution of a release of complainant's claim was not only a breach of the trust assumed and a substantial injury to the enforcement of complainant's rights, but plainly imposed upon defendant a further duty to apprise complainant of his acts in the premises to the end that the *prima facie* bar to complain-

ant's recovery which he had wrongfully created could be removed. That duty was not performed and the statute has now run. In executing the general release under the circumstances stated, defendant has equitably denied himself the defence that he settled for only the balance of his loss.

I am convinced that defendant's conduct in making settlement with the railroad company without the knowledge or cooperation of complainant, and in executing a general release to the railroad company in consideration of the money by him received at that settlement without apprising complainant of the facts which he now asserts, is operative to render him presently liable to complainant in this suit for that part of the loss paid by complainant. I will advise a decree to that effect.